## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| MAYSAROH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1743 (ABJ) |
| | ) | |
| AMERICAN ARAB COMMUNICATIONS | ) | |
| & TRANSLATION CENTER, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### <u>MEMORANDUM OPINION</u>

Plaintiff Maysaroh brings this action against defendants American Arab Communications & Translations Center, LLC t/a/ Zenobia Lounge, Farah Atassi, Charif Khanji, and Ahmad Atassi,[1] claiming that defendants violated 18 U.S.C. §§ 1589, 1590, 1592 (2012) when they allegedly isolated and imprisoned plaintiff in their Virginia residence, subjected her to forced labor in Virginia and in the District of Columbia, and threatened and mistreated her.  Compl. ¶¶ 1–5, 140–52 [Dkt. # 1].  Plaintiff also alleges that defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (2012), and the District of Columbia Minimum Wage Act, D.C. Code § 32-1001 *et seq.* (2012), when they refused to pay her wages, and she asserts that defendants committed the state-law tort of false imprisonment.  *Id*. ¶¶ 153–79. Defendants filed a motion to dismiss plaintiff's complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer venue under 28 U.S.C. § 1404(a) (2012).  Defs.' Mot. to Dismiss ("Defs.' Mot.") at 1 [Dkt. # 13].  Because the Court

---

1   Defendants notified the Court of the correct spelling of defendant Ahmad Atassi's name. Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss at 1 n.1 [Dkt. # 13] (noting that it is Atassi, not Attassi).

finds the District of Columbia is an improper venue, the Court will grant defendants' motion and transfer the action to the Eastern District of Virginia.

## BACKGROUND

Up until 2011, plaintiff Maysaroh lived in Indonesia.  Compl. ¶¶ 28, 40.  She was offered an employment opportunity working in the United States for General Muhammed Al-Karsi, who promised to pay plaintiff $1,000 monthly.  *See id.*  ¶ 36.  As a result, plaintiff arrived in this country on June 7, 2011, and was met at the airport by defendant Farah Atassi and an individual introduced as General Al-Karsi.  *Id.* ¶¶ 41–42.  But plaintiff did not go to work for General Al-Karsi as originally planned; instead, defendant Farah Atassi took plaintiff to defendants' residence in Vienna, Virginia,[2] where defendants allegedly isolated and imprisoned her, subjected her to forced labor, threatened and mistreated her, and refused to pay her wages from June 2011 until plaintiff escaped in January 2012.  *Id.* ¶¶ 1–5, 44–46, 49, 131.

Plaintiff filed the six-count complaint in this case on November 5, 2013, seeking redress for her alleged mistreatment.  Defendants moved to dismiss plaintiff's complaint for improper venue or, in the alternative, to transfer the case to the Eastern District of Virginia.  Defs.' Mot. at 1; Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") [Dkt. # 13].  Plaintiff opposed defendants' motion, arguing that a substantial part of the events underlying the claims in the complaint occurred in the District of Columbia.  Pl.'s Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp.") [Dkt. # 15].

---

2       When plaintiff first arrived at defendants' residence in Vienna, Virginia, three adults – defendants Farah Atassi, Charif Khanji, and Ahmad Atassi – and two children lived there. Compl. ¶ 47.  The parents of defendants Farah and Ahmad Atassi – Grandmother Atassi and Grandfather Atassi – arrived a few weeks after plaintiff and resided in the home through the remainder of plaintiff's alleged forced employment.  *Id.*

I.      **Events underlying plaintiff's claims that allegedly occurred in Virginia.**

In the complaint, plaintiff alleges that defendants forced her to perform household tasks "[s]even days a week, from approximately 7:00 a.m. to 12:00 a.m." in their Virginia home from June 2011 to January 2012.  Compl. ¶¶ 45, 59.  These tasks included cleaning the home, doing laundry for defendants and their extended family, and preparing meals for defendants and their extended family.  *Id.* ¶¶ 59–62.  According to plaintiff, defendants required plaintiff "to work every day, including holidays and weekends," and they also required her to prepare food in Virginia for use at defendants' restaurant in the District of Columbia.  *Id.* ¶¶ 67–68, 83; Maysaroh Sworn Statement, Ex. 1 to Pl.'s Opp. to Defs.' Mot. to Dismiss ¶ 16 [Dkt. # 15-1].

The complaint further alleges that defendants mistreated and imprisoned plaintiff in their home.  For example, plaintiff states that defendants confiscated her belongings, including her passport; prohibited her from contacting anyone outside defendants' family, aside from four supervised phone calls to her husband and son; and failed to show her how to use their home security system.  Compl. ¶¶ 50, 52–55.  She asserts that defendants housed her in a tiny room in their basement without windows, heat, air conditioning, or ventilation; failed to provide her with appropriate medical care; did not permit her to eat regular meals; and permitted a family member to sexually assault her in their Virginia home and to threaten that she would be shot and raped if she attempted to escape.  *Id.* ¶¶ 75, 77–82, 84.  Finally, plaintiff claims that defendants never paid her for the work she performed.  *Id.* ¶¶ 85, 87.

II.     **Events underlying plaintiff's claims that allegedly occurred in the District of Columbia.**

The complaint also alleges that some events took place in the District of Columbia.  For example, plaintiff contends that defendants forced her to accompany them to their restaurant in the District approximately once a week from June 2011 to January 2012.  *Id.* ¶¶ 73–74;

Maysaroh Sworn Statement ¶ 4.   During these weekly visits, which ranged from twenty minutes to two hours, defendants confined plaintiff to an upstairs office area and sometimes required her to perform work, such as dusting off shelves.   Compl ¶¶ 73–74; Maysaroh Sworn Statement ¶¶ 11, 13, 15.   They did not permit plaintiff to wait outside or leave the restaurant unless accompanied by a member of their household, and they forced plaintiff to clean the restaurant for approximately two hours on four separate occasions after the month of Ramadan in 2011. Compl. ¶¶ 69–70; Maysaroh Sworn Statement ¶¶ 12, 17–18.   Defendant Farah Atassi's mother allegedly supervised plaintiff's work and ensured that she did not leave the restaurant.   Maysaroh Sworn Statement ¶¶ 20–21.   Plaintiff claims that defendants never paid her for the work performed in the District of Columbia.   Compl. ¶¶ 85, 87.

## STANDARD OF REVIEW

"In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor."   *Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008), quoting *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276-77 (D.D.C. 2002).   The court may consider material outside of the pleadings. *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002).   "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper."   *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). "Unless there are pertinent factual disputes to resolve, a challenge to venue presents a pure question of law."   *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011).

## ANALYSIS

**I.     The Court will grant defendants' motion because venue is not proper in the District of Columbia.**

Defendants move to dismiss the complaint on the grounds that the complaint does not support venue in the District of Columbia under any of the three bases listed in 28 U.S.C. § 1391(b) (2012).  Defs.' Mem. at 3.  Plaintiff objects and argues that venue is proper in the District under section 1391(b)(2).  Pl.'s Opp. at 1.

Section 1391(b)(2) provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  This section does not require a plaintiff to bring suit in a district where every event that supports an element of the claim occurred; rather, it merely requires a plaintiff to show that some considerable portion of the events occurred in their chosen forum.  *See Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 57 (D.D.C. 2006) ("Nothing in section 1391(b)(2) mandates that a plaintiff bring suit in the district where the *most substantial* portion of the relevant events occurred . . . .").  In applying that analysis, courts should undertake a "commonsense appraisal" of the "events having operative significance in the case."  *Lamont v. Haig*, 590 F.2d 1124, 1134 n.62 (D.C. Cir. 1978) (noting that in certain situations "the forum court should not oppose the plaintiff's choice of venue if the activities that transpired in the forum district were not insubstantial in relation to the totality of events giving rise to the plaintiff's grievance").

Here, the events that occurred in the District of Columbia are not a substantial part of the events that give rise to plaintiff's claims of human trafficking for forced labor, unpaid minimum and overtime wages, and false imprisonment.  Compl. ¶ 5.  It was in Virginia that defendants allegedly forced plaintiff to work "[s]even days a week, from approximately 7:00 a.m. to 12:00 a.m." for approximately seven months, amounting to 5,232 working hours.  *Id.* ¶¶ 45, 59, 131.

Defendants allegedly forced plaintiff to accompany them to their restaurant in the District of Columbia once a week, but that was for twenty minutes to two hours, and they allegedly required her to clean it four separate times. *Id.* ¶¶ 73–74, Maysaroh Sworn Statement ¶ 18. This adds up to about 62 working hours or 1.3% of the total duration of the alleged forced employment.[3] Maysaroh Sworn Statement ¶¶ 4, 11, 17–18, 20. Thus, the Court cannot find that the allegations related to the District make up a substantial part of the events giving rise to plaintiff's claims. *See, e.g.*, *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 760 F.2d 312, 314, 317 (D.C. Cir. 1985) (finding venue improper when 1.5% of defendant's overall sales occurred in the District of Columbia); *Delta Sigma Theta Sorority Inc. v. Bivins*, No. 13-252, 2014 WL 700019, at *4, *9 (D.D.C. Feb. 19, 2014) (finding venue improper when 1.3% of defendants' overall sales occurred in the District of Columbia); *Shay v. Sight & Sound Sys., Inc.*, 668 F. Supp. 2d 80, 84–85 (D.D.C. 2009) (finding venue improper when defendants showed three out of five plaintiffs worked on three projects in the District of Columbia).[4] Venue is therefore improper in the District of Columbia.

---

[3] Plaintiff contends that defendants confined her to their Virginia home for approximately seven months, or 5,232 total hours. Compl. ¶¶ 45, 131. The complaint and plaintiff's sworn statement account for time defendants forced plaintiff to work in Virginia (69.8%) and the District of Columbia (1.3%). Compl. ¶ 59; Maysaroh Sworn Statement ¶¶ 4, 11, 17–18, 20. It does not, however, account for the other 28.9% of plaintiff's time, some of which the Court presumes was spent sleeping at defendants' home in Virginia.

[4] Plaintiff argues that her weekly visits and four additional trips to defendants' restaurant in the District of Columbia distinguish her case from *Shay v. Sight & Sound Systems, Inc.* Pl.'s Opp. at 7. In *Shay*, the court granted defendants' motion to dismiss plaintiffs' claims for improper venue when one plaintiff worked on one project in the District of Columbia and two plaintiffs worked on one project there out of 150 assigned to them collectively. 668 F. Supp. 2d at 85. The Court recognizes that plaintiff presents a stronger case than the *Shay* plaintiffs, but only so far as plaintiff, unlike the plaintiffs in *Shay*, spent more than three occasions in the District. The fact that 1.3% of plaintiff's alleged forced employment took place in the District simply does not support a conclusion that a substantial part of the events or omissions giving rise to her claims occurred there and therefore does not support a finding that venue is proper.

The cases plaintiff relies on do not support a contrary conclusion.  Pl.'s Opp. at 5–7.  In *Douglas v. Chariots for Hire*, the court denied defendants' motion to dismiss for improper venue because more than one-third of the events underlying the plaintiff's claims occurred in the District of Columbia.  918 F. Supp. 2d 24, 29–31 (D.D.C. 2013).  And in *Modaressi v. Vedadi*, the court denied the defendants' motion to dismiss for improper venue because the main acts giving rise to the defendants' liability for fraud occurred at the plaintiff's restaurant in the District.  441 F. Supp. 2d at 56–57.  In that case, one defendant, a restaurant employee, offered free drinks in exchange for excessive tips, and the other defendant instructed restaurant employees to deliver her cash receipts.  *Id.* at 53.  Although the defendants felt some of the benefits of their scheme in Maryland, the operative events that made those benefits possible occurred in the District of Columbia.  *Id.*  Here, the events that occurred in the District do not have the same operative significance as the events in *Modaressi*, and they occurred much less frequently than those in *Douglas*.  The District of Columbia is therefore not a proper venue for plaintiff's action under section 1391(b).

But instead of dismissing the case for improper venue, the Court will exercise its discretion and transfer the case to the Eastern District of Virginia in the interests of justice.  *See* 28 U.S.C. 1406(a) (2012) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.");  *Ellis–Smith v. Sec'y of the Army*, 793 F. Supp. 2d 173, 177 (D.D.C. 2011), citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962) ("Although the decision to transfer or dismiss is committed to the sound discretion of the district court, the interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal.").  Transfer based on improper venue is preferred

over dismissal because "procedural obstacles 'impede an expeditious and orderly adjudication . . . on the merits,'" and "[r]efusal to transfer spells the end to the action, while transfer would not prejudice the defendants' position on merits."  *Sinclair v. Kleindienst*, 711 F.2d 291, 293–94 (D.C. Cir. 1983), quoting *Goldlawr*, 369 U.S. at 466–67.  As the above discussion demonstrates, the overwhelming majority of events giving rise to plaintiff's claims occurred at defendants' home in Vienna, Virginia.  Compl. ¶ 59.  Thus, the Eastern District of Virginia is the appropriate venue in this case.

## II.    Even if venue was proper in the District of Columbia, the Court would grant defendants' motion to transfer the case under 28 U.S.C. § 1404(a).

Section 1404(a) provides "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The moving party bears the burden of demonstrating that transfer is proper, *see SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978), and the court must determine that transfer is necessary for the convenience of the parties and witnesses and in the interest of justice.  *See Fine v. McGuire*, 433 F.2d 499, 501 (D.C. Cir. 1970).  To do so, the Court looks at a combination of private and public interest factors.  The private interest factors to be considered are:

(1) The plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants;

(2) The defendants' choice of forum;

(3) Whether the claim arose elsewhere;

(4) The convenience of the parties;

(5) The convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and

(6) The ease of access to sources of proof.

*Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).  The public interest factors to be considered are:

> (1)  The transferee's familiarity with the governing laws;
>
> (2)  The relative congestion of the calendars of the potential transferee and transferor courts; and
>
> (3)  The local interest in deciding local controversies at home.

*Id.*

Ultimately, "[t]he decision whether or not to transfer the case to another judicial district pursuant to 28 U.S.C. § 1404(a) is discretionary."  *In re DRC, Inc.*, 358 F. App'x 193, 194 (D.C. Cir. 2009).  Therefore, "the proper technique to be employed is a factually analytical, case-by-case determination of convenience and fairness."  *Savoy Indust.*, 587 F.2d at 1154; *see also Treppel v. Reason*, 793 F. Supp. 2d 429, 436 (D.D.C. 2011), quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (noting that courts "adjudicate motions to transfer according to an 'individual case-by-case consideration of convenience and fairness'").

Here, the parties do not dispute that the Eastern District of Virginia is an appropriate forum where this case could be brought.  Instead, plaintiff argues that transfer is improper because the private and public interest factors do not weigh in favor of it.  Pl.'s Opp. at 10–15. The Court disagrees.

### A.  Three of the six private interest factors favor transfer, and the other three are neutral.

The first private interest factor, plaintiff's choice of forum, receives considerable deference in evaluating whether to transfer an action.  *See Savoy Indust.*, 587 F.2d at 1154–55; *see also Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955) ("It is almost a truism that a plaintiff's choice of a forum will rarely be disturbed . . . .").  Deference is diminished, however, when

plaintiff's choice of forum has '"no meaningful ties to the controversy and no particular interest in the parties or subject matter."' *Trout Unlimited*, 944 F. Supp. at 17, quoting *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 165 (D.D.C. 1995). Here, plaintiff's choice of forum is owed little deference. She is not a resident of the District of Columbia, the defendants are not residents of the District of Columbia, and the District of Columbia does not have meaningful ties to the controversy, as the majority of alleged events – such as the imprisonment, unpaid labor, and sexual assault – occurred in Virginia. This factor therefore favors transfer.

The second private interest factor also favors transfer. It instructs the Court to look at defendant's choice of forum. *Trout Unlimited*, 944 F. Supp. at 16. Although that choice generally does not receive deference and the defendant "must establish that the added convenience and justice of litigating in [its] chosen forum overcomes the deference ordinarily given to [p]laintiff's choice," *Douglas*, 918 F. Supp. 2d at 32, defendants' burden in this case is lower because the Court already found that plaintiff's choice of forum is entitled to limited deference. At the same time, however, the proximity of the Eastern District of Virginia reduces defendants' ability to establish the added convenience or justice of litigating in their chosen forum. Accordingly, this factor only slightly favors transfer.

In assessing the third private interest factor, where the claim arose, "[c]ourts in this district have held that claims 'arise' under 28 U.S.C. 1404(a) in the location . . . where most of the significant events giving rise to the claims occurred." *Treppel*, 793 F. Supp. 2d at 436–437 (citation omitted). And "[c]ourts frequently grant transfer motions where the circumstances giving rise to the controversy occurred in the transferee forum." *Parkridge 6, LLC v. U.S. Dep't of Transp.*, 772 F. Supp. 2d 5, 10 (D.D.C. 2009). This factor therefore strongly weighs in favor

of transfer here because, as discussed above, most of the significant events in this case occurred at defendants' home in Vienna, Virginia.  Compl. ¶ 59.

The remaining three private interest factors – the convenience of the parties; the convenience of plaintiff's and defendant's witnesses; and the ease of access to sources of proof – however, are neutral because of the proximity of the District of Columbia to the Eastern District of Virginia.  *See Treppel*, 793 F. Supp. 2d at 437; *see also Parkridge 6, LLC*, 772 F. Supp. 2d at 9 (noting "[c]onvenience of the parties would not be greatly affected by transfer," given the proximity of the District of Columbia and the Eastern District of Virginia).

### B. Two out of three public interest factors favor transfer, and the other is neutral.

The first public interest factor, the transferee court's familiarity with governing laws, is neutral in this case.  On the one hand, the interests of justice are "best served by having a case decided by the federal court in the state whose laws govern the interests at stake."  *Trout Unlimited*, 944 F. Supp. at 19.  But on the other hand, plaintiff brings six claims, four of which arise under federal statutes.  Compl. ¶ 5.  "[W]here the heart of the case involves violations of federal law, this factor is less significant."  *Douglas*, 918 F. Supp. 2d at 33.  Thus, the Court finds this factor is neutral.

The remaining two public interest factors, however, weigh in favor of transfer.  The second public interest factor considers the relative congestion of each court:  "While 'congestion alone is not sufficient reason for transfer, relative docket congestion and potential speed of resolution is an appropriate factor to [consider].'"  *Parkridge 6, LLC*, 772 F. Supp. 2d at 8, quoting *Starnes v. McGuire*, 512 F.2d 918, 932 (D.C. Cir. 1974).  *But see United States v. H & R Block, Inc.*, 789 F. Supp. 2d 74, 84 (D.D.C. 2011) ("Any disparities between the lengths of time from filing to trial may also reflect differences other than congestion.").  In March 2013, the

median time from filing to disposition for civil cases was 8.9 months in the District of Columbia as compared to 5 months in the Eastern District of Virginia.  *See* United States Courts, *Table C-5. U.S. District Courts – Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition During the 12-Month Period Ending Mar. 31, 2013*  1,  http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseload Statistics /2013/tables/C05Mar13.pdf (last visited June 25, 2014).  Therefore, this factor slightly favors transfer.

And the third public interest factor, the local interest in deciding local controversies at home, strongly favors transfer to the Eastern District of Virginia.  *Trout Unlimited*, 944 F. Supp. at 19 ("Controversies should be resolved in the locale where they arise.").  "Other courts in this district have looked at where '[a] clear majority of the operative events took place' in order to determine where a case should be adjudicated."  *Treppel*, 793 F. Supp. at 439–40 (alteration in original), quoting *Trout Unlimited*, 944 F. Supp. at 19.  Here, the overwhelming majority of defendants' alleged conduct took place in Virginia.  Compl. ¶ 59.

In sum, five of the nine public and private interest factors weigh in favor of transfer under section 1404(a).  Thus, even if venue were proper in this case, the Court would nonetheless grant defendants' motion to transfer it to the Eastern District of Virginia.

## CONCLUSION

For the reasons stated above, the Court will grant defendants' motion and transfer this action to the United States District Court for the Eastern District of Virginia.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  June 25, 2014